**MISSOURI DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Respondent,**

v.

**NME HOSPITAL, INC. d/b/a Lutheran Medical Center, et al., Appellants.**

**Nos. WD 56901 to WD 56911 and WD 57007.**

Missouri Court of Appeals, Western District.

Dec. 28, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2000.

Application for Transfer Denied March 21, 2000.

Richard D. Watters, St. Louis, for appellant.

Paul G. Taylor, Joplin, for Missouri Healthcare System, L.P.

Steven M. Mitchell, Government Counsel, for respondent.

Before SPINDEN, P.J., LOWENSTEIN, J. and ULRICH, J.

ULRICH, Judge.

NME Hospital, Inc. d/b/a Lutheran Medical Center and eleven other hospitals[1] (Hospitals) appeal the judgment of the circuit court reversing the order of the Administrative Hearing Commission (AHC) finding that Hospitals were entitled to Medicaid reimbursements of over $30,000,000 after the invalidation of a cap imposed by the Department of Social Services, Division of Medical Services (DMS) on reimbursement rates for certain inpatient psychiatric services. In reversing the AHC's order, the circuit court found that the AHC lacked subject matter jurisdiction to hear Hospitals' complaints. The judgment of the circuit court is affirmed.

DMS is the state agency responsible for administering the Medicaid program in the State of Missouri. Hospitals owned and operated duly licensed and accredited hospitals that provided inpatient psychiatric services for which reimbursement was provided under Missouri's Medicaid plan. Prior to January 1, 1990, health care providers within the Missouri Medicaid program received reimbursements from DMS for such services based on a per diem rate. In 1990, DMS adopted a regulation, 13 CSR 70–15.010(15), which placed a ceiling or cap on the per diem reimbursement rates for certain inpatient psychiatric services.

In 1992 and 1993, three hospitals, in three separate cases, challenged the validity of the psychiatric reimbursement cap. This court, in *Missouri Dep't of Soc. Servs., Div. of Medical Servs. v. Great Plains Hosp., Inc.,* 930 S.W.2d 429, 437 (Mo.App. W.D.1996), found that the cap was invalid based on DMS's failure to meet the procedural requirements of the Boren Amendment[2] in placing the cap on per diem psychiatric reimbursements. The court then found that the hospital was entitled to be reimbursed pursuant to the last validly enacted Medicaid payment plan.[3] *Id.* at 438. Based on the holding in

---

1. Deaconess Health Services Corporation d/b/a Deaconess Hospital; St. John's Regional Health Center; St. Louis University d/b/a St. Louis University Medical Center; Southeast Missouri Hospital Association d/b/a Southeast Missouri Hospital; Lucy Lee Hospital; St. Luke's Northland Hospital; Deaconess Medical Center–West Campus; Psychiatric Healthcare Corporation of Missouri d/b/a Lakeland Regional Hospital; St. John's Regional Medical Center; BHCA of Kansas City, Inc. d/b/a ValueMark Behavioral Healthcare of Kansas City d/b/a North Hills Hospital; Missouri Healthcare System, L.P.

2. The Boren Amendment, 42 U.S.C. § 1396a(a)(13)(A)(1992), requires a state to establish a scheme for reimbursing health care providers for the medical services they provide to Medicaid patients. *Great Plains,* 930 S.W.2d at 431 (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 499–502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)).

3. The two companion cases, *Missouri Dep't of Soc. Servs., Div. of Medical Servs. v. Trinity Lutheran Hosp.,* 930 S.W.2d 426, 429 (Mo. App. W.D.1996), and *Missouri Dep't of Soc. Servs., Div. of Medical Servs. v. Alexian Bros.*

*Great Plains,* DMS withdrew the invalid regulation on October 1, 1996.

Beginning on October 29, 1996, Hospitals filed claims with DMS demanding payment for the difference between the amounts Hospitals would have received without the cap and the amount they actually received for inpatient psychiatric services provided from 1990 through 1995, plus interest. These claims were denied by DMS. Hospitals also filed their complaints in the instant action before the AHC beginning on October 29, 1996, asserting entitlement to additional reimbursements from DMS based on the *Great Plains* decision. Thereafter, Hospitals filed motions for summary determination claiming that no factual, only legal, disputes existed. DMS filed its cross motions for summary determination agreeing that the cases involved only legal issues and arguing that Hospitals were not entitled to additional reimbursements under *Great Plains* because the AHC lacked subject matter jurisdiction to hear the complaints and Hospitals' complaints were barred by the doctrine of sovereign immunity and the statute of limitations.

The AHC issued decisions in favor of Hospitals on May 12, 1998, and thereafter. Although the AHC found that it did not have subject matter jurisdiction over Hospitals' claims under section 208.156.2,[4] it found that jurisdiction was conferred under section 208.156.4. The AHC also found that DMS waived its sovereign immunity and that no statute of limitations applied to limit recovery. It concluded that under the decision in *Great Plains* and the two companion cases, Hospitals were entitled to reimbursements of over $30,000,000 withheld by imposition of the invalid cap from 1990 through 1995.

of *St. Louis, Inc.,* 930 S.W.2d 439, 441 (Mo. App. W.D.1996), were decided the same day as *Great Plains* and also held that the hospitals were entitled to be reimbursed at the standard per diem rate based on the invalid cap.

DMS filed its petitions for judicial review on June 4, 1998, in the circuit court. Hospitals filed cross petitions for judicial review alleging that the AHC failed to grant interest on the liquidated amount for the 13 month period during which Hospitals' motions for summary determination were under consideration. The cases were consolidated, and the circuit court reversed the AHC decisions finding that the AHC lacked subject matter jurisdiction to hear Hospitals' complaints. This appeal followed.

In an administrative review case, an appellate court will review the decision of the AHC and not the judgment of the circuit court. *Psychcare Management, Inc. v. Department of Soc. Servs., Div. of Medical Servs.,* 980 S.W.2d 311, 312 (Mo. banc 1998). An appellate court is generally limited to determining whether the AHC's decision is supported by substantial and competent evidence upon the whole record; whether the decision is arbitrary, capricious, or unreasonable; or whether the AHC abused its discretion. *Id.* The court may not determine the weight of the evidence or substitute its discretion for that of the administrative body. *Id.* Questions of law, however, are matters for the independent judgment of the court. *Id.*

The issue of the AHC's subject matter jurisdiction in this case is dispositive, and the other issues raised are not addressed. Hospitals claim that the AHC had subject matter jurisdiction to hear and decide the complaints based on sections 208.156.2 and 208.156.4. The AHC is a creature of statute and "has only such jurisdiction or authority as may be granted by the legislature." *Livingston Manor, Inc. v. Department of Soc. Servs., Div. of Family Servs.,* 809 S.W.2d 153, 156 (Mo. App. W.D.1991). If the AHC lacks statu-

4. All statutory references are to RSMo 1994 unless otherwise indicated.

tory power to consider a matter, it is without subject matter jurisdiction. *Id.* The AHC's jurisdiction in Medicaid service provider cases is conferred by section 621.055, which provides in pertinent part:

> Any person authorized under section 208.153, RSMo, to provide services for which benefit payments are authorized under section 208.152, RSMo, may seek review by the administrative hearing commission of any of the actions of the department of social services specified in subsection 2, 3, or 4 of section 208.156, RSMo.

§ 621.055.1. Thus, if DMS's actions in this case fell within the purview of subsections 2, 3, or 4 of section 208.156, the AHC had jurisdiction to entertain Hospitals' complaints. *State ex rel. Oakwood Manor Nursing Ctr. v. Stangler,* 809 S.W.2d 90, 92 (Mo.App. W.D.1991). Section 208.156 provides, in pertinent part:

> 2. Any person authorized under section 208.153 to provide services for which benefit payments are authorized under section 208.152 whose claim for reimbursement for such services is denied or is not acted upon with reasonable promptness shall be entitled to a hearing before the administrative hearing commission pursuant to the provisions of chapter 621, RSMo.
>
> 3. Any person authorized under section 208.153 to provide services for which benefit payments are authorized under section 208.152 who is denied participation in any program or programs established under the provisions of chapter 208 shall be entitled to a hearing before the administrative hearing commission pursuant to the provisions of chapter 621, RSMo.
>
> 4. Any person authorized under section 208.153 to provide services for which benefit payments are authorized under section 208.152 who is aggrieved by any rule or regulation promulgated by the department of social services or any division therein shall be entitled to a hearing before the administrative hearing

commission pursuant to the provisions of chapter 621, RSMo.

§ 208.156.

■ The AHC did not have subject matter to hear and decide Hospitals' complaints in this case. First, jurisdiction was not conferred to the AHC pursuant to section 208.156.4. In their complaints, Hospitals, unlike the hospitals in *Great Plains* and the two companion cases, did not challenge the validity of the Medicaid reimbursement cap on psychiatric services. The regulation imposing the cap had been withdrawn by DMS based on *Great Plains* prior to the filing of the complaints in this case. Instead, Hospitals sought additional reimbursements over the reimbursements they actually received in prior rate periods, and DMS denied their requests. An agency rule is a statement of policy or interpretation of law of future effect that acts on unnamed and unspecified persons or facts. *Missouri Health Care Ass'n v. Missouri Dep't of Soc. Servs.,* 851 S.W.2d 567, 569 (Mo.App. W.D.1993). Conversely, an agency decision engages the agency expertise on specific facts. *Id.* In this case, Hospitals sought review of DMS decisions—the denials of their claims for additional reimbursements—not of the validity of the psychiatric reimbursement cap as a matter of future policy without reference to named persons or facts. Section 208.156.4, which authorizes a hearing before the AHC for any person aggrieved by a rule or regulation of the Department of Social Services, therefore, did not apply.

■ Hospitals argue, however, that they are aggrieved by the enforcement of the former regulation for many years, and, thus, are entitled to a hearing before the AHC under section 208.156.4. They contend that the clause "who is aggrieved by any rule or regulation" within section 208.156.4 contemplates both current and past injury. In construing statutes, a court must endeavor to ascertain the intent of the legislature from the language used and give effect to that intent if possi-

ble. *Great Plains*, 930 S.W.2d at 438. "Legislative intent should be determined by considering the plain and ordinary meaning of the terms in the statute." *Id.* Statutory construction is a question of law. *Id.* The plain and ordinary meaning of the clause in section 208.156.4 only encompasses present injury by a rule or regulation. If the General Assembly intended to confer jurisdiction to the AHC over cases where a person was injured or harmed in the past by a prior regulation and may continue to be injured into the present, it would have explicitly done so. Section 208.156.4, therefore, only gives the AHC jurisdiction in cases where a person is presently injured by an existing rule. At the time Hospitals filed their complaints with the AHC, the regulation that Hospitals claim injured them was no longer in existence. Section 208.156.4, therefore, did not confer jurisdiction to the AHC in this case.

■ Likewise, jurisdiction was not conferred to the AHC pursuant to subsection 2 of section 208.156. At about the same time Hospitals filed their complaints with the AHC, they sent letters to DMS demanding additional reimbursements for the period January 1, 1990, through June 30, 1995, based on the *Great Plains* decision. It appears that Hospitals filed their complaints with the AHC within 30 days of DMS's decisions denying their demands for additional reimbursement as required by section 208.156.8.[5] The AHC, however, found that Hospitals' demands were not timely filed under the DMS regulations and that Hospitals did not have a legal right to demand additional payments outside the normal rate-setting period. Thirteen CSR 70–3.100 establishes the general rules for submission or resubmission of claims and adjustments of claims to Mis-

souri Medicaid. 13 CSR 70–3.100 (1998). It provides specific time periods for the filing by participating providers of original claims and adjustments to paid claims requesting Medicaid reimbursements. *Id.* The time limit for filing an adjustment is provided in 13 CSR 70.3–100(6). Subsection six provides, "Adjustments to a paid claim must be filed within eighteen (18) months from the date of payment." 13 CSR 70–3.100(6). In this appeal, Hospitals do not contest the AHC ruling that their claims for additional reimbursements were untimely under 13 CSR 70–3.100(6). The issue is, therefore, abandoned. *Kabir v. Missouri Dep't of Soc. Servs.*, 845 S.W.2d 102, 102–103 (Mo.App. W.D.1993). The AHC did not obtain jurisdiction in this case based on section 208.156.2.

Although Hospitals were foreclosed from bringing this case on jurisdictional grounds, Hospitals had a prior mechanism to assert their claims. In section 208.156.4, the General Assembly provides a procedure to contest a rule or regulation as enacted to determine its legal validity. Had Hospitals brought complaints challenging the validity of the psychiatric cap regulation during the time when the regulation was in effect, as did the hospitals in *Great Plains* and the two companion cases, the AHC would have had jurisdiction over the complaints pursuant to section 208.156.4. § 208.156.4; *Great Plains*, 930 S.W.2d at 438. Additionally, the General Assembly provides a remedy under section 208.156.2 for providers whose timely claims to DMS are denied. Had Hospitals timely submitted their claims for adjustments under the regulations and then filed their complaints with the AHC within 30 days of DMS's denial of those claims, the AHC would have had jurisdiction in the case. §§ 208.156.2 and 208.156.8; *Living-*

---

5. Section 208.156.8 provides, in pertinent part:

Any person authorized under section 208.153 to provide services for which benefit payments are authorized under section 208.152 and who is entitled to a hearing as provided for in the preceding sections shall

have thirty days from the date of mailing or delivery of a decision of the department of social services or its designated division in which to file his petition for review with the administrative hearing commission.

§ 208.156.8.

ston Manor, 809 S.W.2d at 157. To hold otherwise would allow providers to demand additional reimbursements from the State indefinitely for prior rate periods after regulations have been modified or withdrawn or payments have been made. Such a policy would confound the budgetary process of state government. Additionally, allowing providers to file claims indefinitely and to effectively force DMS to issue a new decision denying the claims, which would provide the basis for a new appeal period under section 208.156.2, would have the affect of negating the 30–day requirement of section 208.156.8.

The AHC abused its discretion in finding that it had subject matter jurisdiction in this case. The judgment of the circuit court reversing the decision of the AHC is affirmed.

All concur.